IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 07-cv-02261-PAB-MJW
     (consolidated with 08-cv-01226-PAB-MJW)

ALCOHOL MONITORING SYSTEMS, INC.,

     Plaintiff,

v.

ACTSOFT, INC.,
OHIO HOUSE MONITORING SYSTEMS, INC., and
US HOME DETENTION SYSTEMS AND EQUIPMENT, INC.,

     Defendants.

_____

## ORDER DENYING MOTION TO DISMISS
_____

This patent case comes before the Court on defendant U.S. Home Detention

Systems and Equipment Inc.'s ("U.S. Home") motion to dismiss for lack of personal

jurisdiction [Docket No. 163].  The Court's subject-matter jurisdiction is proper due to

the existence of a federal question under 28 U.S.C. § 1331, in conjunction with the

section of the U.S. Code which provides district courts jurisdiction over patent cases, 28

U.S.C. § 1338(a).  For the reasons stated below, the motion is denied.

## I.  BACKGROUND

Plaintiff Alcohol Monitoring Systems, Inc. ("AMS") is the putative assignee of

United States Patent No. 5,220,919 (the "'919 Patent").  The '919 Patent, entitled

"Blood Alcohol Monitor," describes an invention which, according to the patent itself,

> relates to continuous monitoring of human blood alcohol levels and more particularly to a non-invasive blood alcohol level monitoring device.  Even more particularly, the invention relates to a portable device, affixed to the subject, for monitoring blood alcohol, without requiring subject participation, by determining the alcohol levels expelled through a subject's skin.

U.S. Patent No. 5,220,919 col.1 (filed August 23, 1991).

AMS first filed its complaint in this case on October 25, 2007 [Docket No. 1]. The initial complaint named only Actsoft, Inc. and Ohio House Monitoring Systems, Inc. ("Ohio House") as defendants.  On November 18, 2008, Magistrate Judge Michael J. Watanabe granted [Docket No. 77] AMS's motion [Docket No. 62] to amend its complaint.  The amendment added U.S. Home as a defendant and alleged that all defendants – Actsoft, Ohio House, and U.S. Home – were infringing, inducing infringement, or contributing to the infringement of the '919 Patent through the making, using, selling, offering to sell, and/or importing of a product known as the House Arrest Solution.  *See* Am. Compl. for Patent Infringement [Docket No. 85] ("Am. Compl.") ¶¶ 18, 22, 26.  On March 2, 2009, U.S. Home filed the motion to dismiss that is presently before the Court.  The motion seeks dismissal of the claims against U.S. Home pursuant to Federal Rule of Civil Procedure 12(b)(2) due to the alleged lack of personal jurisdiction.  The motion is fully briefed and ripe for disposition.

The amended complaint makes the following allegations relevant to the question of this Court's personal jurisdiction over U.S. Home:

> This Court has personal jurisdiction over the Defendants because Defendants' wrongful conduct has and is occurring in interstate commerce within the District of Colorado.

> Defendants regularly conduct and solicit business in the state of Colorado, and engage in other persistent courses of actions and derive revenue from goods and services supplied into the state of Colorado and/or used within the state of Colorado.

> The Defendants expected or should have reasonably expected their conduct as described above to have consequences in the state of Colorado.

2

Am. Compl. ¶¶ 9, 10, 11.  U.S. Home's "wrongful conduct," as referenced above, is

described as:

> infringing at least one claim of the '919 Patent in violation of 35 U.S.C. §
> 271(a) by making, using, selling, offering to sell, and/or importing the
> "House Arrest Solution" in the United States; . . . infringing at least one
> claim of the '919 Patent in violation of 35 U.S.C. § 271(b) by inducing
> infringement with the "House Arrest Solution"; and/or . . . infringing at least
> one claim of the '919 Patent in violation of 35 U.S.C. § 271(c) by
> contributing to infringement with the "House Arrest Solution."

Am. Compl. ¶ 26.

In asserting that it has insufficient contacts with the state of Colorado to support

personal jurisdiction in this forum, U.S. Home offers the following factual allegations:

- U.S. Home has never had an office in Colorado;

- U.S. Home has never been licensed to do business in Colorado;

- U.S. Home has never had an established place of business in Colorado;

- U.S. Home has never sold any product, derived any revenue, or transacted any business in Colorado;

- U.S. Home has never had a registered agent for service of process in Colorado;

- None of U.S. Home's directors, shareholders, officers, or employees ever resided in or were ever based in Colorado, and none traveled to Colorado on behalf of U.S. Home;

- U.S. Home has never held any interest in real property in Colorado;

- U.S. Home has never engaged in any advertising in Colorado;

- U.S. Home has never had a bank account in Colorado;

- U.S. Home sold TattleTale bracelets only to Actsoft, Inc., a company located in Florida. U.S. Home did not sell TattleTale bracelets to anyone else.  The sales to Actsoft were based on purchase orders and invoices, and there was no representative, sales, agency, or other distribution agreement with Actsoft;

- U.S. Home did not control, restrict or direct Actsoft's use, marketing or distribution of the TattleTale bracelet, nor did U.S. Home create, employ or control Actsoft's distribution system; and

- The TattleTale bracelet can be used anywhere in the United States and there are no specific design elements or features meant for any specific geographic area.

Def. U.S. Home Detention Systems, Inc.'s Reply in Supp. of Its Mot. to Dismiss for Lack of Personal Jurisdiction [Docket No. 178] ("U.S. Home's Reply") at 2-3 (citing Def. U.S. Home Detention Systems, Inc.'s Mot. to Dismiss for Lack of Personal Jurisdiction [Docket No. 163] ("U.S. Home's Mot. to Dismiss"), ex. 1 (Decl. of Christina Miller in Supp. of Def. U.S. Home Detention Systems, Inc.'s Mot. to Dismiss for Lack of Personal Jurisdiction)).

In response to U.S. Home's motion and the above-cited affidavit, AMS offered the following specific factual assertions.  First, AMS alleges that the individuals who created and control U.S. Home for the purpose of selling the House Arrest System are the same individuals who created and control Actsoft.  *See* Pl.'s Opp'n to Def. US Home Detention Systems, Inc.'s Mot. to Dismiss for Lack of Personal Jurisdiction [Docket No. 171] ("AMS's Resp.") at 3.  Second, AMS avers that Actsoft is the sole distributor of the TattleTale Bracelet, an essential component of the House Arrest System.  According to AMS, U.S. Home purchases the device from a non-party to this action, then sells it to Actsoft.  *See* AMS's Resp. at 3.  Third, AMS alleges that Actsoft has marketed the House Arrest System throughout the United States.  Fourth, AMS alleges that Actsoft successfully sold the system in fifteen states, but not in Colorado.  Fifth, AMS alleges that Actsoft specifically targeted Colorado companies as part of its marketing campaign.  Sixth, AMS claims that Actsoft entered unsuccessful negotiations to sell the product to a Denver company.  Finally, AMS asserts that Actsoft "advertises via the internet, permitting potential Colorado customers to exchange information with the host computer, purchase Actsoft's products, including the accused device, obtain user guides and newsletters, request training courses and utilize interactive features and live on-line chat for customer questions."  AMS's Resp. at 4.

## II. PERSONAL JURISDICTION

### A.  Legal Standard

The Federal Circuit Court of Appeals has exclusive original appellate jurisdiction over patent cases pursuant to 28 U.S.C. § 1295(a)(1).  *See Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1323 (Fed. Cir. 2009).  In deciding whether to apply its own law or the law of the circuit from where a case arises, the Federal Circuit consults a "courtesy rule" under which it applies the law of the regional circuit on certain procedural matters. *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996). However, the Federal Circuit will apply "[its] own law to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right."  *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999) (internal quotation marks omitted).

On issues of personal jurisdiction in patent infringement cases, the Federal Circuit has ruled repeatedly that these issues are intimately related to patent law and, as such, are governed by the law of the Federal Circuit.  *See, e.g.*, *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200-01 (Fed. Cir. 2003); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir. 1994).  As a result, the present analysis will be governed by the law of the Federal Circuit.

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process."  *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985)).

### B.  Long-Arm Statute

In its motion to dismiss, Actsoft contends that "[b]ecause Colorado's long-arm statute reaches 'to the fullest extent permitted by the due process clause of the

fourteenth amendment to the United States Constitution,' [the long-arm-statute and due-process] inquiries collapse into a single question: whether exercising personal jurisdiction over U.S. Home in this case is consistent with federal due process." U.S. Home's Mot. to Dismiss at 1-2 (internal citations omitted); *see Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)); *see also Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (holding under a similar state long-arm statute that the two inquiries collapse into a single due process inquiry).   In its response, AMS agrees with this proposition.   *See* AMS's Resp. at 5.   Only in its reply in support of its motion to dismiss does U.S. Home argue that "[w]hile plaintiff acknowledges that it must satisfy both Colorado's long-arm statute and the requirements of due process, it fails to allege or identify any basis for meeting the former." U.S. Home's Reply at 7.   According to U.S. Home, Colorado still requires a distinct two-step analysis, with step one being the identification of a provision in the long-arm statute which is implicated in the case.

However, by failing to raise this argument in its original motion, U.S. Home has waived it.   Under the law of both the Federal Circuit and the Tenth Circuit, a party generally may not raise an issue for the first time in a reply brief.   *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009); *Novosteel SA v. United States*, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002).   The rationale underpinning this rule is tied to the fact that a responding party to a motion ordinarily does not have an opportunity to respond to a reply.   *See Novosteel SA*, 284 F.3d at 1274.   Therefore, allowing a party to raise an issue for the first time in a reply brief would prevent the responding party from presenting a counter-argument and force the Court to decide a potentially contentious issue without the benefit of the opposing perspective.

The Federal Circuit has noted that "[a]lthough this practice is not governed by a rigid rule, we will adhere to it except where circumstances indicate that it would result in basically unfair procedure." *Norman v. United States*, 429 F.3d 1081, 1091 n.5 (Fed. Cir. 2005) (internal quotation marks omitted). Furthermore, district courts generally are given discretion in determining whether a party has waived issues of personal jurisdiction. *Rates Technology Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307 (Fed. Cir. 2005).

Here, no unfair procedure attends the Court's finding of waiver by U.S. Home on the long-arm statute question. Personal jurisdiction is an individual right that may be waived by its holder. *Rates Technology Inc.*, 399 F.3d at 1307. Although U.S. Home has challenged personal jurisdiction in this case, it has done so in its motion to dismiss only under a due process argument. In fact, the motion itself asserted that there is a single analysis that must be undertaken, the due process analysis, a position that is in direct conflict with the long-arm-statute argument raised for the time in the reply brief. AMS, having agreed with the original assertion in the motion, had no reason to address the long-arm statute question in its response. Furthermore, because AMS simply agreed with U.S. Home's original assertion regarding the long-arm statute analysis, U.S. Home's new argument cannot be deemed a reply to an issue raised in the response.

I further find that no unfair prejudice attends the Court's decision to find waiver here because U.S. Home's long-arm-statute argument is not compelling. The Colorado long-arm statute extends jurisdiction over causes of action arising from "[t]he commission of a tortious act within this state." Colo. Rev. Stat. Ann. § 13-1-124(1) (West 2009). The Colorado Supreme Court has explained that "the term 'tortious act' as used in the long arm statute implies the total act embodying both the cause and its effect." *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992) (internal

quotation marks omitted).  In other words, the long-arm statute is satisfied even if only the acts which caused the injury or the resulting injury itself occurs in the state.  *Classic Auto Sales, Inc.*, 832 P.2d at 235-36.  Although the Federal Circuit has noted that treating patent infringement as a "tort" is an imperfect characterization, it does so nonetheless for purposes of long-arm-statute analyses.  *See, e.g.*, *North Am. Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994).

The situs for at least a portion of AMS's alleged injury is Colorado.  As discussed below, AMS bases its indirect infringement claims on U.S. Home's alleged contribution to and inducement of Actsoft's purported direct infringement.  At least a portion of Actsoft's purported infringement – that is, the offering for sale of the House Arrest System – occurred in Colorado.  "[T]he situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee." *Beverly Hills Fan Co.*, 21 F.3d at 1571.

For infringement by sale, "[e]conomic loss occurs to the patent holder at the place where the infringing sale is made because the patent owner loses business there." 21 F.3d at 1571.  Congress added the "offer to sell" form of infringement in the 1994 amendments to 35 U.S.C. § 271(a).  However, the situs of the injury under this form of infringement logically follows the same rule as actual sales.  An allegedly infringing device generates interest among potential purchasers that is detrimental to the commercial interests of the patentee.  *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998).  Because the injury from the infringing offer is felt where the patent holder loses potential business, the situs of the injury is the location where the allegedly infringing device is offered for sale.  *Cf. 3D Sys., Inc.*, 160 F.3d at 1378-80 (finding personal jurisdiction was proper over corporate defendant that was foreign to forum but made offers for sale in the forum).

The injury suffered under AMS's direct infringement claims also arguably extend into Colorado.  While the sale to Actsoft may have occurred outside Colorado, because Actsoft and U.S. Home were collaborators in a purposeful distribution system, the injury would not have occurred until Actsoft marketed the product in the general stream of commerce.  *Cf. Beverly Hills Fan Co.*, 21 F.3d at 1571 (finding injury under long-arm statute occurred in forum state even though defendants did not directly sell allegedly infringing device there, but did purposefully ship the product into the state through an established distribution channel).  Therefore, because addressing the long-arm-statute question would be unfair to AMS and a finding of waiver would not unfairly prejudice U.S. Home, the question is deemed waived.

### C.  Due Process

"In the seminal case on personal jurisdiction, *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court held that due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Inamed Corp.*, 249 F.3d at 1360 (emphasis and internal quotation marks omitted).  From the language of *International Shoe*, courts derive a two-pronged analysis which consists of a "minimum contacts" prong and a "fair play and substantial justice" prong.

The first prong – requiring "minimum contacts" with the forum state – "focuses on whether the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."[1]  *Inamed Corp.*, 249 F.3d at 1360 (quoting *Burger King Corp.*, 471 U.S. at

---

[1] In a patent case such as the present one, the due process clause at issue lies within the Fifth rather than the Fourteenth Amendment of the United States Constitution; however, the analysis is the same.  *See Viam Corp.*, 84 F.3d at 427 n.2.

471-76) (internal quotation marks omitted).  The second prong – ensuring fair play and substantial justice – "gives the defendant an opportunity to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Inamed Corp.*, 249 F.3d at 1360 (quoting *Burger King Corp.*, 471 U.S. at 476-77) (internal quotation marks omitted).

"In judging minimum contacts, the Supreme Court has held, the proper focus is on the relationship among the defendant, the forum, and the litigation." *Silent Drive, Inc.*, 326 F.3d at 1203 (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984)) (internal quotation marks and alteration marks omitted).  Minimum contacts may be established on two levels.  First, "general" personal jurisdiction exists where "the defendant [has] 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Silent Drive, Inc.*, 326 F.3d at 1200 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).  Second, "specific" personal jurisdiction is "based on activities that 'arise out of' or 'relate to' the cause of action and can exist even if the defendant's contacts are 'isolated and sporadic.'"  *Silent Drive, Inc.*, 326 F.3d at 1200 (citing *Burger King Corp.*, 471 U.S. at 472-73) (alteration marks omitted).  "[T]he burden of proof is on the plaintiff to establish 'minimum contacts.'"  *Inamed Corp.*, 249 F.3d at 1360.  Where an evidentiary hearing has not been held, a plaintiff need only establish a prima facie case of personal jurisdiction over a defendant and the Court must accept the uncontroverted allegations in the complaint as true.  *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1344 (Fed. Cir. 2006).  Once the plaintiff establishes "minimum contacts," the defendant is responsible for demonstrating "the presence of other considerations that render the exercise of jurisdiction unreasonable." *Inamed Corp.*, 249 F.3d at 1360.

After it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 476. The Supreme Court has identified the following factors to be considered in this analysis: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1331 (Fed. Cir. 2008) (quoting *Burger King Corp.*, 471 U.S. at 476-77).

Generally speaking, a Court must have personal jurisdiction over each claim asserted against a defendant. *See McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). In the present case, plaintiff AMS does not appear to argue that there is general jurisdiction over defendant U.S. Home in Colorado and the evidence does not support such a finding. Therefore, the Court must address whether there is specific personal jurisdiction over each of the claims that AMS asserts against U.S. Home.

In the amended complaint, AMS alleges that U.S. Home infringed the '919 Patent in three ways. First, AMS claims that U.S. Home directly infringed the patent by "making, using, selling, offering to sell, and/or importing the 'House Arrest Solution' in the United States." However, the factual record surrounding the motion to dismiss makes it clear that the only plausible allegations against U.S. Home for direct infringement consist of selling or offering for sale the House Arrest Solution. The second form of infringement alleged against U.S. Home by AMS's amended complaint is inducement of infringement in violation of 35 U.S.C. § 271(b). According to § 271(b),

11

"[w]hoever actively induces infringement of a patent shall be liable as an infringer."  The

third form of infringement alleged against U.S. Home in AMS's amended complaint is

contributory inducement in violation of 35 U.S.C. § 271(c).  According to § 271(c)

> [w]hoever offers to sell or sells within the United States or imports into the
> United States a component of a patented machine, manufacture,
> combination or composition, or a material or apparatus for use in
> practicing a patented process, constituting a material part of the invention,
> knowing the same to be especially made or especially adapted for use in
> an infringement of such patent, and not a staple article or commodity of
> commerce suitable for substantial noninfringing use, shall be liable as a
> contributory infringer.

The Federal Circuit separates the two-ponged *International Shoe* test into three

questions: (1) whether the defendant "purposefully directed" its activities at residents of

the forum; (2) whether the claim "arises out of or relates to" the defendant's activities

with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and

fair."  *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201-02 (Fed. Cir. 2003).

The first and second factors effectuate the "minimum contacts" prong, while the third

factor relates to the "fair play and substantial justice" prong.  *Silent Drive, Inc.*, 326 F.3d

at 1202.

### D.  AMS's Indirect Infringement Claims

In Count 3 of its amended complaint, AMS alleges that U.S. Home has indirectly

infringed the '919 patent.  Am. Compl. ¶ 26.  Indirect infringement arises when a party

either induces or contributes to an underlying direct infringement of the patent.  *See* 35

U.S.C. § 271(b) - (c) (2006).  Under 35 U.S.C. § 271(b), "[w]hoever actively induces

infringement of a patent shall be liable as an infringer."  Under 35 U.S.C. § 271(c),

"[w]hoever offers to sell or sells within the United States . . . a component of a patented

machine . . . for use in practicing a patented process . . . knowing the same to be

especially made or especially adapted for use in an infringement of such patent . . .

shall be liable as a contributory infringer."  AMS alleges both forms of indirect

infringement – inducing infringement and contributory infringement.

12

In order to analyze whether the Court has minimum contacts with AMS's indirect infringement claims, it is necessary to review the Federal Circuit's standards for succeeding on such claims.  As for contributory infringement, the Federal Circuit has stated that "[i]n order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (internal quotation marks omitted).  As for a claim of inducing infringement, the Federal Circuit has stated that a "person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys. Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990).

### 1.  Activities Purposefully Directed at the Forum State

With respect to the Federal Circuit's first due process factor – whether the defendant "purposefully directed" its activities at residents of the forum state – the case law suggests that this purpose can be inferred from knowledge.  On the one hand, it is unremarkable to say that a defendant who knowingly and personally engages in an activity in a state purposely directed its activities at that state.  However, a defendant purposely directs indirectly infringing activities at a state when the defendant knows that the direct infringement occurred in that forum and has some role in inducing or producing the combination of components that constitute such infringement.  *See North Am. Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1580-81 (Fed. Cir. 1994).

Therefore, for purposes of the Court's personal jurisdiction over indirect infringement claims, the important inquiries will be: (1) what are defendant's alleged

indirectly infringing activities; (2) what is the location of those activities; and (3) whether those activities were purposely directed at the forum state.

As to the first inquiry, I look to the purported direct infringement underlying AMS's indirect infringement claims.  There are two possible acts of direct infringement by parties other than U.S. Home evinced by the facts before the Court.  The first is the manufacturing of the TattleTale device by third-party vendor New Wave Technology.  However, there is no indication or assertion that the alleged direct infringement, or any inducement of or contribution to it, occurred in Colorado.  The second potential direct infringement is Actsoft's offering the House Arrest System for sale.  Once U.S. Home challenged the broad jurisdictional statements in AMS's amended complaint, *see* Am. Compl. ¶¶ 9, 10, 11, AMS clarified that it does not assert that U.S. Home's alleged inducing and contributing activities occurred in Colorado.  AMS does claim, however, that Actsoft's direct infringement occurred in Colorado.  *See* AMS's Resp. at 2-4.

Therefore, as to the second inquiry – the location of the allegedly infringing activity – Colorado is an appropriate locale.  AMS claims that Actsoft offered the allegedly infringing device for sale in Colorado and offers deposition testimony that appears to support this claim.  U.S. Home does not contest the veracity of this assertion, nor does it present conflicting evidence.  Therefore, the Court assumes this fact to be true for purposes of this motion.  The situs of an injury from patent infringement is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee.  *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005).  Because a patent holder may suffer economic loss both in the place where infringement is induced or contributed to and the place where a third-party ultimately infringes the patent, courts have considered both to be the situs of the injury.  *Compare North Am. Philips Corp.*, 35 F.3d at 1580-81 (knowingly contributing to infringement in forum state supports personal jurisdiction in

that forum), *with Wayne Pigment Corp. v. Halox*, 220 F. Supp. 2d 931, 935-36 (E.D. Wis. 2002) (alleged inducing activity created minimum contacts necessary for exercise of personal jurisdiction).  Here, as the state in which Actsoft's offer to sell occurred, Colorado may properly be considered the target of U.S. Home's alleged inducement of or contribution to that purported infringement.

As to the third inquiry – whether U.S. Home's activities were *purposely* directed at Colorado – U.S. Home's knowledge of Actsoft's activities suffices.  There is no debate among the parties that U.S. Home is a separate entity from Actsoft, and AMS has not raised a veil-piercing or alter-ego argument that would conflate the two entities. Although courts generally respect the bounds of corporate structures when it comes to liability, *see Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990), independent corporate structures do not necessarily equate with ignorance of each other's business.  AMS has alleged that U.S. Home and Actsoft are owned and controlled by the same individuals, *see* AMS's Resp. at 1, 2, 15, to which U.S. Home has not objected.  Therefore, U.S. Home was fully aware of Actsoft's business activities, including the efforts to market the House Arrest System in Colorado.  *Cf. Shanks v. Westland Equip. & Parts Co.*, 668 F.2d 1165, 1167 (10th Cir. 1982) (finding personal jurisdiction over entity having almost no direct contacts with the forum state in part because it worked in concert with another corporation that was owned by the same family that had considerable contacts with the state).

Even if U.S. Home did not and could not control Actsoft's decision to sell the device in Colorado, by deciding to use Actsoft as the sole distribution channel for its product nationwide and continuing to do so knowing that Actsoft began offering to sell the device in Colorado, Colorado became a target of U.S. Home's activities.  Therefore, I find that U.S. Home "purposefully directed" its activities at residents of the forum state, Colorado.

### 2.  Arising out of or Relating to Activities in the Forum

I now turn to the Federal Circuit's second due process factor – whether the claim "arises out of or relates to" the defendant's activities with the forum.  "Although the nexus necessary to satisfy the 'arise out of or related to' requirement of the due process inquiry has not been clearly delineated by the Supreme Court, [the Federal Circuit has] stated that it is significant that the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard."  *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008).  With this standard in mind, I find that AMS's claims of indirect infringement arise out of or relate to U.S. Home's activities directed at the forum because U.S. Home knew that Actsoft was offering the allegedly infringing device for sale in Colorado.  As a result, the first prong of the *International Shoe* standard has been met: U.S. Home's contacts with the state of Colorado were such that it should have reasonably anticipated being haled into court here on AMS's indirect infringement claims.

### 3.  Whether Assertion of Jurisdiction is Reasonable and Fair

In addressing the whether exercising personal jurisdiction over U.S. Home would be "reasonable and fair," *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201-02 (Fed. Cir. 2003), I turn to the factors discussed by the Federal Circuit in *Avocent Huntsville*, 552 F.3d at 1331.  First, I find that the additional burden imposed on U.S. Home by litigating this case in Colorado is minimal.  Again, until AMS gives the Court reason to conclude otherwise, I will respect the corporate independence of each party.  Nonetheless, the reality is that the corporate representatives and legal counsel for U.S. Home are the same as those for the other entities before the Court.  In fact, it stands to reason that the burdens associated with litigating the claims against U.S. Home in the

present litigation would pose less of a burden than participating in a separate, parallel case in a different forum.

As for the second consideration – the forum state's interest in adjudicating the dispute – I find that Colorado has a colorable interest in adjudicating the present dispute. Every state has an interest in both "providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," *Burger King*, 471 U.S. at 473, and "discouraging injury within its borders," *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1356 (Fed. Cir. 2002).

The plaintiff's interest in obtaining convenient and effective relief is also significant in this case. In this litigation AMS is seeking to enjoin what it believes is a coordinated, knowing effort among multiple entities to infringe the '919 Patent. While the full breadth of U.S. Home's role in the effort is not evident from the record at hand, it is clear that U.S. Home is a key player in the system that markets, distributes, and sells the allegedly infringing device. While the purveyors of the device may have segmented their operation among various entities, it would be more unjust and unfair to require AMS to litigate each segment of the operation in a separate forum than it would be to require U.S. Home to answer for its role in the process in a single case with the other entities involved in the operation. The nature of the alleged operation also convinces the Court that the legal system's interest in obtaining the most efficient resolution of controversies favors adjudicating AMS's claims against U.S Home in this forum.

Finally, to the extent that there is a fundamental social policy implicated by this case, the several states share an interest in the protection of patent rights against those who infringe them as well as the vindication of those falsely accused of such offense. Those interests would be undermined by the potential inefficiencies and inconsistencies that could attend piecemeal litigation of this matter.

While "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities," *see Burger King Corp.*, 471 U.S. at 477-78, such is not the case here.  In fact, the factors discussed above militate in favor of the exercise of personal jurisdiction over U.S. Home.  Indeed, the factors considered under the fair play and substantial justice prong can "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King Corp.*, 471 U.S. at 477.

Once the plaintiff establishes "minimum contacts," the defendant is responsible for demonstrating "the presence of other considerations that render the exercise of jurisdiction unreasonable." *Inamed Corp.*, 249 F.3d at 1360.  U.S. Home raises a single argument for why allowing this case to proceed in this forum would offend traditional notions of fair play and substantial justice.  According to U.S. Home, it would be unfair to require it to join this litigation at such a late date with trial quickly approaching. Actsoft raised this same argument on U.S. Home's behalf in response [Docket No. 76] to AMS's motion to amend the complaint in order to add U.S. Home as a party [Docket No. 62].  Magistrate Judge Michael J. Watanabe granted [Docket No. 77] AMS's motion to amend and no party objected.  Furthermore, it is highly unlikely that this case will proceed in a way that would produce the unfairness which U.S. Home fears.  After U.S. Home filed its motion to dismiss, the Court construed the '919 Patent [Docket No. 196]. Based on this construction, AMS conceded that its infringement claims against Actsoft and Ohio House were no longer viable.  Therefore, the direct infringement necessary for AMS to maintain its indirect infringement claims has been eliminated on the merits in this litigation.  As a result, the indirect claims against U.S. Home are unlikely to go to trial.

18

U.S. Home has failed to establish that permitting AMS's indirect infringement claims to proceed in this forum would offend traditional notions of fair play and substantial justice.  As a consequence, assertion of personal jurisdiction is "reasonable and fair" and due process does not prevent the Court from exercising personal jurisdiction over U.S. Home with respect to AMS's indirect infringement claims.

### E.  AMS's Direct Infringement Claim

In Count 3 of its amended complaint, AMS also alleges that U.S. Home directly infringed the '919 Patent.  AMS claims that U.S. Home infringed "at least one claim of the '919 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing the 'House Arrest Solution' in the United States."  Section 271(a) of Title 35 states that "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . during the term of the patent therefor, infringes the patent."  The assertions by both parties in connection with the present motion indicate that the principal activities at issue in AMS's direct infringement claim are U.S. Home's offering for sale and sale of the allegedly infringing device.

### 1.  Activities Purposefully Directed at the Forum State

The allegedly infringing activities in this case are of two varieties.  The first is U.S. Home's sale of TattleTale bracelets to Actsoft.  There is no dispute that this act occurred outside of Colorado.  The second type of allegedly infringing activity is the offering for sale and the sale of the allegedly infringing device by Actsoft.  There is uncontested evidence before the Court that Actsoft offered the House Arrest System for sale in Colorado.  Therefore, while U.S. Home has had no direct contacts with Colorado, it appears that U.S. Home had contact with the state through intermediaries such as Actsoft.

U.S. Home's lack of direct contact with Colorado, however, is not fatal to AMS's attempt to hale U.S. Home into court in this district.  "When a corporation purposefully

avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (internal citation and quotation marks omitted). Purposeful availment not only occurs through direct activities in a state; it also occurs where "a corporation . . . delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp.*, 444 U.S. at 297-98. "Hence if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

The Supreme Court revisited this "stream of commerce" theory of minimum contacts seven years later in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987). However, the Court was unable to reach a majority on its application. Three justices joined the portion of the opinion authored by Justice O'Connor which articulated what has come to be known as the "stream of commerce plus" view. *See Asahi Metal Industry Co.*, 480 U.S. at 108-113. According to this view, "an exercise of personal jurisdiction requires more than the mere act of placing a product in the stream of commerce." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994). Instead, these four justices concluded that "[t]he 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State" and that "[t]he placement of a product into the stream of commerce,

20

without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Industry Co.*, 480 U.S. at 112 (internal citations omitted).

According to the four justices espousing the "stream of commerce plus" view, "[a]dditional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi Metal Industry Co.*, 480 U.S. at 112. Furthermore, a defendant may sufficiently avail itself of a state's market if it were to "create, control, or employ the distribution system" that brings the product to the state. *Asahi Metal Industry Co.*, 480 U.S. at 112.

Four other justices, in a concurrence authored by Justice Brennan, articulated what has become known simply as the "stream of commerce" theory. See *Asahi Metal Industry Co.*, 480 U.S. at 116-21 (Brennan, J., concurring in part and concurring in the judgment). This view rejects the requirement that a defendant direct additional conduct at the forum. Instead, these justices were of the opinion that due process is not offended where a defendant placed its product in the stream of commerce with the knowledge or intent that the product would enter the forum state. *Asahi Metal Industry Co.*, 480 U.S. at 117-21 (Brennan, J., concurring in part and concurring in the judgment). As Justice Brennan put it,

> [t]he stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.

*Asahi Metal Industry Co.*, 480 U.S. at 117 (Brennan, J., concurring in part and concurring in the judgment).

To date, the Federal Circuit has not adopted or endorsed either of the two positions in *Asahi*.  *See Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008).  However, on more than one occasion it has applied some form of the stream of commerce theory.  *Avocent Huntsville Corp.*, 552 F.3d at 1332.  The facts of one such case, *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), are particularly relevant to the present analysis.  In that case, a patent holder attempted to bring suit in the Eastern District of Virginia against a Chinese manufacturer and a New Jersey importer and distributor of an allegedly infringing device.  Neither defendant had directly sold the allegedly infringing device within the state of Virginia.  However, the plaintiff alleged that the defendants had indirectly sold the device there through intermediaries, namely a retailer with stores located within the state.

The court in *Beverly Hills Fan* started its analysis by noting that it was not necessary to decide which of the two stream of commerce theories to adopt "since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing."  *Beverly Hills Fan Co.*, 21 F.3d at 1566.  The court then explained that "plaintiff has stated all of the necessary ingredients for an exercise of jurisdiction consonant with due process: defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there."  *Beverly Hills Fan Co.*, 21 F.3d at 1566.  Ultimately, it did not matter to the analysis that the defendants had not directly sold the allegedly infringing product in the forum state.  It was enough that "defendants purposefully shipped the accused fan into Virginia through an established distribution channel."  *Beverly Hills Fan Co.*, 21 F.3d at 1565.  According to the court, "[f[rom [their] ongoing relationships, it can be presumed that the distribution

channel formed by defendants and [the retailer] was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was Virginia." *Beverly Hills Fan Co.*, 21 F.3d at 1564.

The present case offers an analogous fact pattern.  U.S. Home was an integral part of the distribution system that allowed Actsoft to offer the House Arrest System for sale in Colorado.  U.S. Home engaged Actsoft to offer for sale and ultimately sell the product nationwide.  U.S. Home also knew that Actsoft was marketing the product in Colorado.  Rather than attempting to prevent that effort, U.S. Home ratified it by continuing its relationship with Actsoft.  Much like the middleman distributor/importer in *Beverly Hills Fan*, U.S. Home is an integral part of the distribution channel that resulted in the purposeful marketing of the House Arrest System in Colorado.  Furthermore, under *Beverly Hills Fan*, U.S. Home's assertion that it did not "create, employ or control *Actsoft's* distribution system," U.S. Home's Reply at 2-3 (emphasis added), is irrelevant.  It is not necessary that a defendant in the chain of distribution control the other participants.  It is enough that U.S. Home had an ongoing business relationship with Actsoft and that U.S. Home knew or reasonably could foresee that the allegedly infringing product would be offered for sale in Colorado.  *Beverly Hills Fan Co.*, 21 F.3d at 1564; *see also North Am. Philips Corp.*, 35 F.3d at 1580.

Here then, as in *Beverly Hills Fan*, the Court need not decide which of the stream-of-commerce approaches to adopt.  U.S. Home took affirmative steps toward Colorado by "marketing the product through a distributor who has agreed to serve as the sales agent [here]," and "employ[ing] the distribution system" that brings the product to the state.  *Asahi Metal Industry Co.*, 480 U.S. at 112.  U.S. Home also continued its relationship with Actsoft after U.S. Home became aware of Actsoft's efforts to market the product in Colorado.  As a result, the Federal Circuit's first due process factor is met

for plaintiff's direct infringement claim because U.S. Home "purposefully directed" its activities at residents of Colorado.

### 2.  Arising out of or Relating to Activities in the Forum

AMS's direct infringement claim is directly related to the activities discussed above.  Therefore, the second factor – whether the claim "arises out of or relates to" the defendant's activities with the forum – is also satisfied.  Accordingly, the "minimum contacts" prong of the *International Shoe* test is met for AMS's direct infringement claim.

### 3.  Whether Assertion of Jurisdiction is Reasonable and Fair

For the reasons it is fair for the Court to assert personal jurisdiction over U.S. Home with respect to AMS's indirect claim, it is also fair to litigate the direct infringement claim in this forum.  Furthermore, "when a corporation may reasonably anticipate litigation in a particular forum, it cannot claim that such litigation is unjust or unfair, because it 'can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to consumers, or, if the risks are too great, severing its connection with the State.'"  *Asahi Metal Industry Co.*, 480 U.S. at 119. (Brennan, J., concurring in part and concurring in the judgment) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)); *see also Beverly Hills Fan Co.*, 21 F.3d at 1565.  As discussed already, U.S. Home knew Actsoft was marketing the House Arrest System in the state of Colorado.  Although it had the opportunity to act to alleviate the risk of litigation in Colorado, it did not.  Instead, U.S. Home ratified Actsoft's behavior by continuing the relationship and continuing to offer for sale the TattleTale bracelets to and through Actsoft.  Therefore, the Federal Circuit's third due process factor – that the assertion of personal jurisdiction over U.S. Home for AMS's direct infringement claim be "reasonable and fair" – is also met.

### 4. Pendent Personal Jurisdiction

In addition to the reasons stated above, to the extent that the Court may lack personal jurisdiction under the conventional analysis over U.S. Home for any portion of AMS's direct infringement claim, the Court would exercise its discretion under pendent personal jurisdiction and allow the claim to proceed. "Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002); *see also Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

While the Federal Circuit has not ruled on the application of pendent personal jurisdiction, all of the circuit courts that have, have adopted it. *See Action Embroidery Corp.*, 368 F.3d at 1180; 4A Charles Wright & Arthur Miller, Federal Practice and Procedure § 1069.7 (3d. ed. 2009). Perhaps due to the fact that pendent personal jurisdiction has long been analogized to pendent subject-matter jurisdiction, the former concept has been widely applied where the additional claims have been state claims. However, several courts have applied the concept of pendent personal jurisdiction where the additional claim is a federal claim. *See Robinson Eng'g Co. Ltd. Pension Plan & Trust v. George*, 223 F.3d 445, 449 (7th Cir. 2000); *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 556 (E.D. Va. 2009) (holding that courts may exercise "pendent personal jurisdiction over claims arising from a common nucleus of operative fact, whether the additional claim is a state claim or a federal claim").

In the present case, the Court is convinced of its personal jurisdiction over U.S. Home for AMS's indirect infringement claims. AMS's direct and indirect infringement

25

claims against U.S. Home arise from a common nucleus of operative fact. Furthermore, the interests of justice favor a single, consolidated action addressing all of the claims implicating the '919 Patent.  Therefore, the exercise of pendent personal jurisdiction over U.S. Home for any portion of AMS's direct infringement claims that might otherwise fall outside the Court's jurisdiction is appropriate.

## III.  CONCLUSION

Pursuant to the foregoing discussion, the Court has personal jurisdiction over U.S. Home for all of the claims which AMS asserts against it.  As a result, it is

**ORDERED** that defendant U.S. Home Detention Systems and Equipment Inc.'s motion to dismiss for lack of personal jurisdiction [Docket No. 163] is DENIED.


DATED January 21, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge