IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 07-cv-02261-PAB
    (Consolidated with 08-cv-01226)

ALCOHOL MONITORING SYSTEMS, INC.,

    Plaintiff,

v.

ACTSOFT, INC.,
OHIO HOUSE MONITORING SYSTEMS, INC., and
U.S. HOME DETENTION SYSTEMS AND EQUIPMENT, INC.,

    Defendants.

## ORDER

This matter comes before the Court on Defendants' Supplemental Renewed Motion for Summary Judgment on Claim Step (E) [Docket No. 332]. The motion is fully briefed and ripe for disposition.

## I. BACKGROUND

Plaintiff Alcohol Monitoring Systems Inc. is the owner of U.S. Patent No. 5,220,919 ("'919 patent"). Docket No. 85 at 3-4. Plaintiff alleges that defendants ActSoft, Inc., Ohio House Monitoring Systems, Inc., and U.S. Home Detention Systems and Equipment, Inc. infringe the '919 patent by making, selling, offering to sell, or importing the House Arrest Solution device ("HAS"), a competing product. Docket No. 85 at 4-7.

On April 27, 2009, this Court issued an Order Regarding Claim Construction [Docket No. 196], which construed the claim at issue here, namely Claim 14(e).

Plaintiff appealed the Order and the Court's ruling on defendants' summary judgment [Docket No. 241]. On January 24, 2011, the Federal Circuit affirmed in part and reversed in part as to the construction of Claim 14. *See Alcohol Monitoring Sys., Inc. v. ActSoft, Inc.*, 414 F. App'x 294, 299-300 (Fed. Cir. 2011).

The '919 patent is entitled the "Blood Alcohol Monitor" and discloses a method of operating a portable device that securely attaches to a human subject and monitors alcohol levels expelled through a subject's skin. *Alcohol Monitoring Sys.*, 414 F. App'x at 295. The device is designed to monitor the consumption of alcohol in individuals under house arrest or in alcohol rehabilitation programs. *Id*. The patent application entitled "Blood Alcohol Monitor" was filed on August 23, 1991 and was assigned Patent Application Serial No. 07/748,976. Docket No. 319 at 4. The '919 patent was issued on June 22, 1993. *Id*. On August 15, 1997, the '919 patent was assigned to plaintiff. Docket No. 85 at 4.

Claim 14 of the '919 patent describes:

A method for monitoring the percentage of blood alcohol content of a human subject, said method comprising the steps of:

(a)  securely attaching an alcohol measurement device to the human subject using an attachment device;

(b)  storing an error indication if the human subject tampers with said measurement device or an error occurs within said measurement device;

(c)  measuring a percentage of alcohol expelled through the subject's skin into said measurement device and storing a measurement result;

(d)  repeating steps (b) and (c) until a predetermined amount of time expires;

(e)  transmitting each of said measurement results and each of said tamper and error indications to said monitoring station; and

(f)     repeating steps (b) through (e).

Docket No. 104-4 at 19.

On May 19, 2003, Jeffrey Hawthorne, one of the listed inventors on the '919 patent and the co-founder and Chief Technology Officer for plaintiff, and others[1] filed another patent application entitled "Method and Apparatus for Remote Blood Alcohol Monitoring," which was assigned Patent Application Serial No. 10/441,940 ("'940 application"). Docket No. 305-3 at 2. This application issued on December 9, 2008 as U.S. Patent No. 7,462,149 ("'149 patent"). Docket No. 305-2 at 2. Similar to the '919 patent, the '149 patent disclosed a device and methods of operating a device to monitor a subject's blood alcohol levels. Docket No. 305-2 at 16.

During the prosecution of the '940 application, the Patent and Trademark Office ("PTO") rejected some of the application's claims as obvious under 35 U.S.C. § 103(a). Docket No. 305-3 at 6. The PTO relied on the '919 patent and the Payne reference to find that the prior art obviated the proposed claims. *Id*. To overcome the PTO's objections, Hawthorne amended the claims of the '940 application to include a requirement that the transmission of data occur "without active participation by the human subject [the wearer]" and distinguished the '919 patent from the '940 application based on the difference between active and passive participation of the wearer to effectuate data transmission. Docket No. 305-3 at 7. In the proposed amendment, Hawthorne argued:

"Periodically, typically once per day, *the subject connects a serial interface 108*

---

[1] For ease of reference, the Court will refer to the listed inventors for the '940 application as "Hawthorne."

> *between the monitor 102 and a base system 104.* When this connection is made, the monitor 102 transfers all the readings, tamper, error indicators, and other data, taken since the last connection into the base system 104 where they are stored." (Col. 5, lines 36-42.) Without the subject physically connecting the monitor device to the base unit via a cable, no readings can be transmitted to the base unit. Applicant claims in amended independent claims 1 and 21 that the transmission of readings from the monitor device to the modem requires no *active participation by the subject*."

Docket No. 305-3 at 7-8 (emphasis in original).

Despite plaintiff's arguments, the PTO rejected the proposed claims as obvious because of the '919 patent, the Payne reference, and the Klein reference. Docket No. 305-3 at 8. In an attempt to distinguish the '919 patent from the '940 application, Hawthorne provided several other amendments to the PTO. Docket No. 305-3 at 15-18. With each proposed amendment, Hawthorne maintained the position that the '919 patent and the '940 application were dissimilar because the '919 patent "requires active participation by the human subject to affect the transfer of the data" while the '940 application transmits data without active participation by the human subject. Docket No. 305-3 at 12.

The PTO finally accepted Hawthorne's proposed amendments and issued a notice of allowance for the '149 patent. Docket No. 305-2 at 1. In the relevant claims, the '149 patent discloses the transmission of data "through a first communication link without active participation by the human subject." Docket No. 305-2 at 25.

## II. DEFENDANTS' ARGUMENTS

Despite the fact that the Federal Circuit has already construed Claim 14(e), defendants argue that, under principles of prosecution history estoppel and judicial estoppel, plaintiff should not be permitted to argue a different construction of Claim

14(e) than plaintiff proffered to the PTO as part of the '940 patent application process. Docket No. 332 at 4-6. Defendants claim that the Federal Circuit's opinion in this case does not foreclose the consideration of this evidence because these facts were never presented to this Court or the Federal Circuit. Docket No. 327 at 4. Additionally, defendants contend that, until very recently, they were unaware of these facts because they were never disclosed by plaintiff. *Id*.

Defendants assert that, unlike Claim 14(e) of the '919 patent, the HAS device does not require the active participation of the wearer to effectuate data transfers. Docket No. 332 at 6. Defendants state that data transfers with the HAS device only require a mobile phone which uses Bluetooth technology to wirelessly transfer data. *Id*. at 6. As a result, defendants claim that, since the HAS device does not require the active participation of the wearer, it cannot infringe the '919 patent literally or under the doctrine of equivalents. *Id*. at 6. Consequently, defendants state that they are entitled to summary judgment because there are no genuine issues of fact as to infringement.

Plaintiff counters by stating that the Federal Circuit has already interpreted Claim 14(e) of the '919 patent and therefore the Federal Circuit's interpretation is binding as the law of the case. Docket No. 323 at 3-4. Plaintiff states that defendants' attempt to limit Claim 14(e) to transmissions that require "the active participation of the [wearer]" is unconvincing because it is not apparent from the patent's intrinsic evidence. *Id.* at 4. Moreover, plaintiff argues that prosecution history estoppel is not applicable to the facts of this case because statements made during the prosecution of a later, unrelated patent cannot be used to interpret and/or limit an earlier, already issued patent. *Id.* at 4-5.

### III.  ANALYSIS

#### A.  Prosecution History Estoppel

Defendants appear to have abandoned their arguments regarding prosecution history estoppel.  *See* Docket No. 327 at 2 n.1 ("The applicability of prosecution history estoppel need not be reached here, however, as facts are undisputed and the requirements for judicial estoppel clearly satisfied.").  Nevertheless, the Court will review defendants' arguments in the event defendants have not abandoned such argument.

Prosecution history "constitutes a public record of the patentee's representations concerning the scope and meaning of [a patent claim]."  *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000).  Prosecution history estoppel is a recognized defense to infringement.  *See Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 30 (1997).  Prosecution history estoppel can apply to a narrowing amendment which is made for any reason related to the statutory requirements for a patent, to amendments made to overcome prior art, and to arguments made during prosecution that show a clear and unmistakable surrender of subject matter.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 735-37 (2002).  Prosecution history estoppel serves to limit the doctrine of equivalents by denying equivalents to a claim limitation whose scope was narrowed during patent prosecution for reasons related to patentability.  *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003).

However, prosecution history estoppel does not apply to statements made during the prosecution of a subsequent, nonfamilial patent.  *Tex. Digital Sys. v. Telegenix, Inc.*,

308 F.3d 1193, 1211 (Fed. Cir. 2002). In the absence of a formal relationship or incorporation, statements made in front of the PTO from a later, unrelated patent prosecution cannot be used to interpret an earlier issued patent. *Pfizer, Inc. v. Ranbaxy Labs. Ltd.,* 457 F.3d 1284, 1290 (Fed. Cir. 2006); *Goldenberg v. Cytogen, Inc.,* 373 F.3d 1158, 1167-68 (Fed. Cir. 2004) (finding that statements in another patent or its prosecution history are irrelevant to claim construction "[a]bsent a formal relationship or incorporation during prosecution" of the patent at issue). The fact that a particular patent may have the same inventor does not make that patent a continuation or a continuation-in-part of the earlier patent. *Abbott Labs. v. Dey, L.P.,* 287 F.3d 1097, 1105 (Fed. Cir. 2002); *see In re Berg*, 140 F.3d 1428, 1435 n. 7 (Fed. Cir. 1998) (noting that two applications filed by the same inventor were not related by "continuation, continuation-in-part" and that filing two separate applications implied that "each application is independent and patentably distinct.").

In this case, it is undisputed that the '919 patent and the '149 patent are not continuations or continuations-in-part of one another. Moreover, the simple fact that the '919 patent and the '149 patent share an inventor does not render the two patents familial patents. *See In re Berg*, 140 F.3d at 1435. Defendants' arguments rest solely on the fact that the '919 patent is incorporated by reference into the '149 patent. *See* Docket No. 305-3 at 3 ("[U.S. Patent No. 5,220,919 and European Patent No. EPO 623001B1] both are hereby incorporated herein by reference."). However, although the '919 patent was incorporated by reference into the '149 patent, such incorporation simply makes the statements regarding the '919 patent part of the intrinsic record of the

'149 patent. *See Goldenberg*, 373 F.3d at 1168 (statements from another patent's prosecution may be used if they have a formal relationship or are incorporated during the prosecution of the *patent at issue*). Thus, the '919 patent may be used in construing the terms of the '149 patent, but the '149 patent's prosecution history may not be used to construe the '919 patent. Therefore, because there is no formal relationship between the '919 patent and the '149 patent, the Court finds that prosecution history estoppel does not apply to plaintiff's statements made during the prosecution of the '149 patent.

### B.  Judicial Estoppel

Judicial estoppel is based upon protecting the integrity of the judicial system by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *See Bradford v. Wiggins*, 516 F.3d 1189, 1194 (quoting *New Hampshire v. Maine,* 532 U.S. 742, 749-50 (2001)). Though there is no precise formula, in order to determine whether to apply judicial estoppel, courts typically inquire as to whether: "1) a party's later position is clearly inconsistent with its earlier position; 2) a party has persuaded a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and 3) the party seeking to assert the inconsistent position would derive an unfair advantage if not estopped." *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1209 (10th Cir. 2011). "Because of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party, judicial estoppel must be applied with caution." *Lowery v.*

*Stovall*, 92 F.3d 219, 224 (4th Cir. 1996).

Defendants assert that plaintiff should be judicially estopped from asserting that Claim 14(e) does not require the active participation of the wearer because such position: (1) would be inconsistent with the position plaintiff took in front of the PTO; (2) would create the perception that either the PTO or this Court was misled; and (3) would give plaintiff an unfair advantage during the trial in this case. Defendants assert that judicial estoppel is equally applicable in cases where the first proceeding was an administrative one rather than a proceeding in front of a district court. *See Lampi Corp. v. American Power Prods., Inc.,* 228 F.3d 1365, 1377 (Fed. Cir. 2000) (finding that, under Seventh Circuit law, the doctrine of judicial estoppel applied to previous statements made to the PTO); *Mathews,* 649 F.3d at 1209 (finding that judicial estoppel applied to previous statements made during Social Security Administration hearings); *AT&T Corp. v. Beehive Telephone Co., Inc.,* 2010 WL 376668, *14 (D. Utah Jan. 26, 2010) (finding that plaintiff was judicially estopped from altering testimony given to the FCC)*; Analog Devices, Inc. v. Linear Tech. Corp.,* 479 F. Supp. 2d 202, 212 (D. Mass. 2007) (applying judicial estoppel to arguments made to the PTO). The Court agrees that judicial estoppel may be based on statements made in administrative proceedings. *Mathews,* 649 F.3d at 1209; *Beehive*, 2010 WL 376668, at *14.

The first judicial estoppel factor mentioned in *Mathews* is that a party's later position is clearly inconsistent with its earlier position. *Mathews*, 649 F.3d at 1209. In this case, it is undisputed that the Federal Circuit never addressed the question of whether transmission at Claim 14(e) requires the active participation of the wearer.

*Alcohol Monitoring Sys.,* 414 F. App'x at 299-300; Docket No. 327 at 4.  Additionally, the parties have not raised this issue before now.  However, the fact that such arguments have not been previously raised does not preclude the application of judicial estoppel in this case.  First, defendants claim that they only recently became aware of the statements at issue regarding Claim 14(e), which claim is not disputed by plaintiff.  Thus, the law of the case does not preclude judicial estoppel.  *See Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.,* 300 F. App'x 904, 907 (Fed. Cir. 2008) (finding that courts may depart from the law of the case when new and different material is discovered that was not presented in the prior litigation).  Second, while defendants' argument is anticipatory given that plaintiff has not offered such a construction of Claim 14(e) in this case, plaintiff has had the opportunity to deny that it intends to do so during trial.  Plaintiff, however, has not made such a disclaimer.  Thus, there appears to be a proper basis for defendants' motion.  Therefore, judicial estoppel could apply should plaintiff assert a position that is contrary to the positions plaintiff[2] took in front of the PTO.

As to the second *Mathews* factor, the Court determines whether a court or an administrative agency accepted a party's earlier position.  649 F.3d at 1209.  Defendants assert that the PTO granted the '149 patent because of plaintiff's representations regarding the distinction between active and passive participation of the wearer.  *See* Docket No. 327 at 3 ("[the PTO] ultimately allowed the claims of the '919

---

[2] Plaintiff does not argue a lack of identity between the positions Hawthorne took in regard to the '940 application and positions plaintiff may now take in regard to Claim 14(e).  As a result, it has waived such argument.  Moreover, given Mr. Hawthorne's position at plaintiff, there is no inequity in finding such identity.

patent to issue based at least in part on these arguments."). Plaintiff's response does not dispute this assertion or otherwise address the issue of judicial estoppel. As a result, the Court will assume that plaintiff's representations to the PTO about Claim 14(e) were one of the reasons that the PTO approved the '149 patent.

With regard to the last factor, whether plaintiff would derive an unfair advantage if it were not estopped from changing positions, plaintiff persuaded the PTO to accept its argument that the '919 patent required the "active participation" of the wearer in order to effectuate transfer. Based at least in part on this representation, the PTO issued the '149 patent. Allowing plaintiff to alter its position would give plaintiff the unfair advantage of retaining the '149 patent while pursuing an infringement claim based on a position inconsistent with the prior successful position. *See Mathews*, 649 F.3d at 1209-10.

Accordingly, the Court rules that plaintiff is judicially estopped from asserting a construction or interpretation of Claim 14(e) of the '919 patent that is inconsistent with the position that plaintiff took in front of the PTO regarding the '149 patent.

### C.  Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1286 (Fed. Cir. 2007). In making the determination, the court views the record in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

Despite the application of judicial estoppel, there remains a genuine question of

fact as to whether a jury could find that wireless transmission via Bluetooth technology is the equivalent of transmission through the connection of a cable.  Thus, defendants have failed to show that they are entitled to summary judgment.

## IV.  CONCLUSION

Accordingly, it is

**ORDERED** that Defendants' Supplemental Renewed Motion for Summary Judgment on Claim Step (E) [Docket No. 332] is **GRANTED in part and DENIED in part**.

DATED October 25, 2011.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge